[D.I. 49]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

DINA OLMO and GENE OLMO, her
husband,

        Plaintiffs,

    v.

ATLANTIC CITY PARASAIL, LLC,
et al.,

        Defendants.

Civil No. 13-4923 (AMD)

**OPINION**

APPEARANCES:

Thomas J. Vesper, Esq.
Kathleen F. Beers, Esq.
Westmoreland, Vesper Quattrone & Beers, PA
Bayport One – Suite 500
8025 Black Horse Pike
West Atlantic City, NJ 08232
    Attorney for Plaintiffs Dina Olmo and Gene Olmo


David M. Kupfer, Esq.
Carroll McNulty Kull LLC
120 Mountain View Boulevard
P.O. Box 650
Basking Ridge, NJ 07920
    Attorney for Defendant Atlantic City Parasail, LLC

**DONIO**, Magistrate Judge

In this action, Plaintiffs Dina Olmo and Gene Olmo assert claims against Defendant Atlantic City Parasail, LLC (hereinafter, "AC Parasail") as a result of injuries Dina Olmo sustained while riding in a boat operated by AC Parasail. Presently before the Court is AC Parasail's motion for summary judgment against Plaintiffs Dina Olmo and Gene Olmo. Plaintiffs oppose the motion. (See Motion for Summary Judgment (hereinafter, "Def.'s Mot.") [D.I. 49]; see also Plaintiffs' Brief in Opposition (hereinafter, Pls.' Opp'n) [D.I. 52].) The Court has considered the parties submissions and decides this matter pursuant to Federal Rule of Civil Procedure 78(b). For the reasons set forth herein, AC Parasail's motion is granted.

Plaintiffs filed the initial complaint in this matter in the Superior Court of New Jersey. (See Notice of Removal [D.I. 1].) On August 15, 2013, the matter was removed to this Court (see id.) and Plainitffs' subsequent motion to remand was denied. (See Order [D.I. 16], Jan. 24, 2014.) In the complaint, Plaintiffs assert claims for (1) negligent entrustment of the subject motor vessel (Count I); (2) Defendant Captain Doe's negligent maintenance and/or supervision of passengers (Count III); (3) violation of common carrier higher duty of care (Count IV); and (4) unseaworthiness (Count V). (See Exhibit A (hereinafter, "Complaint") to Notice of Removal [D.I. 1], at 21-33 on the

docket.)[1] In addition, Plaintiff Gene Olmo, Dina Olmo's husband, has asserted a claim for loss of consortium (Count VI) against AC Parasail. (Id. at 32 on the docket.) AC Parasail asserts a counterclaim against Dina Olmo for indemnification. (Second Amended Answer, Separate Defenses, and Counterclaim [D.I. 36], 13.) AC Parasail contends that Dina Olmo, "[p]rior to purchasing the subject parasailing trip, . . . signed a liability waiver which stated, in pertinent part":

> **Release of Liability, Waiver of Claims and**
> **Indemnity Agreement**
> By executing this document, I agree to hold
> the releases harmless and indemnify them in
> conjunction with any injury or loss of life
> that may occur as a result of engaging in the
> above activities.

---

[1] Plaintiffs also assert a claim of negligent entrustment of the subject motor vessel (Count II) against Defendant Captain John Doe. (See Complaint [D.I. 1], 27-28 on the docket.) However, after discovery is complete, and the plaintiff has failed to identify a "fictitious defendant, the court may dismiss the fictitious defendant." Martin v. Comunale, No. 03-06793, 2006 WL 208645, at *13 (E.D. Pa. Jan. 18, 2006). Accordingly, as discovery is complete and Plaintiffs have yet to name the fictitious defendant in Count II, summary judgment is granted as to Count II. See Yahaya v. Maxim Health Care Servs. Inc., No. 10-5557, 2012 WL 6203785, at *15 (D.N.J. Dec. 12, 2012) (dismissing a count where a fictitious defendant was not named). Moreover, as Plaintiffs have yet to replace "XYZ, owner of A.C. Parasail" or "Captain John Doe" with named Defendants, these fictitious defendants are dismissed. The Court notes that based on the parties' submissions, Captain Eric Redner appears to be "Captain John Doe." (See Defendant's Statement of Undisputed Material Facts [D.I. 49-6], ¶ 14; see also Plaintiffs' Response to Defendant's Statement of Material Facts [D.I. 52-1], ¶ 14; see also Eric Redner Deposition [D.I. 52-8].) If Plaintiffs request to substitute Captain Eric Redner for Captain John Doe, Plaintiffs must address why, in light of this Opinion, any of the claims asserted against Captain Redner are viable.

(Id. at 14, ¶ 4.) Further, AC Parasail avers that Dina Olmo had contractual obligations toward it and thus "is entitled to reimbursement from [] Dina Olmo for costs related to any injury that occurred as a result of her engaging in the subject parasailing activity." (Id. at 14 ¶¶ 7–8.)

This Court maintains subject matter jurisdiction over this matter based upon its admiralty jurisdiction under 28 U.S.C. § 1333. For the reasons set forth below, the Court[2] grants AC Parasail's motion for summary judgment.

The following facts are not in dispute.[3] In July of 2011, Plaintiffs were vacationing with their teenage sons in Atlantic City, New Jersey. (Defendant's Statement of Undisputed Material

---

[2] The parties have consented to this Court's jurisdiction on March 10, 2014 pursuant to 28 U.S.C. § 636(c)(1), Federal Rule of Civil Procedure 73(b), and Rule 73.1 of the Local Civil Rules for the United States District Court, District of New Jersey. (See Notice, Consent, and Reference of a Civil Action to a Magistrate Judge [D.I. 21].)

[3] Pursuant to Local Civil Rule 56.1(a), a party moving for summary judgment must provide a statement setting forth "material facts as to which there does not exist a genuine issue[.]" L. Civ. R. 56.1(a). "The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and citing to the affidavits and other documents submitted in connection with the motion[.]" Id. "[A]ny material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion." Id. "[T]he opponent may also furnish a supplemental statement of disputed material facts . . . if necessary to substantiate the factual basis for opposition." Id.

Facts (hereinafter, "Def.'s Facts") [D.I. 49-6], ¶ 2; see also
Plaintiffs' Response to Defendant's Statement of Material Facts
(hereinafter, "Pls.' Resp.") [D.I. 52-1], ¶ 2.) On July 11, 2011,
Dina and Gene Olmo visited AC Parasail's kiosk, and after speaking
with AC Parasail's employee for fifteen minutes, decided to reserve
spots for parasailing the next morning. (Exhibit B (hereinafter,
"Dina Olmo Dep.") to the Declaration of David M. Kupfer
(hereinafter, "Kupfer Dec.") [D.I. 49-3], 122:14 to 123:22, 33-34
on the docket.) On July 12, 2011, the Olmo family (Dina, Gene, and
their two sons), boarded AC Parasail's boat, the "Fly By," which
was captained by Eric Redner. (Def.'s Facts, ¶ 2; see also Pls.'
Resp. [D.I. 52-1], ¶ 2.) Along with the Olmo family, there were
five other passengers on the boat. (Def.'s Facts, ¶ 2; see also
Pls.' Resp. [D.I. 52-1], ¶ 2.)

Prior to boarding the boat, Dina Olmo signed a waiver
form entitled "Parasailing Release of Liability, Waiver of Claims,
Express Assumption of Risk and Indemnity Agreement." (Def.'s Facts
[D.I. 49-6], ¶ 4; see also Pls.' Resp. [D.I. 52-1], ¶ 4.) The
relevant portions of the liability waiver provide:

> I, Dina Olmo, do hereby affirm and acknowledge
> that I have been fully informed of the
> inherent hazards and risks associated with
> Parasailing, water transportation to and from
> the parasail vessel and other such related
> water sport activities to which I am about to
> engage, including but not limited to:

1) changing water flow, tides, currents, wave action and ship's wakes;

2) collision with any of the following: a) other participants, b) the watercraft, c) other watercraft, d) man made or natural objects, e) shuttle boat;

. . .

Release of Liability, Waiver of Claims and Indemnity Agreement

In consideration of being allowed to participate in the above described Watersports, transportation, and parasailing activities, as well as the use of the facilities, specifically including water transportation (shuttle boat) to and from the parasail vessel and sue [sic] of the equipment of the below [named – illegible][4] releasees, I hereby agree as follows:

1) To waive and release any and all claims based upon negligence, active or passive, with the exception of intentional, wanton, or willful misconduct that I may have in the future against . . . the following named persons or entities herein referred to as releasees: Capt. Eric Redner [and] Atlantic City Parasail

2) To release the releasees, their officers, directors, employees, representatives, agents, and volunteers, and vessels from liability and responsibility whatsoever and for any claims or causes of action that I, my estate, heirs, executors, or assigns may have for personal injury, property damage, or wrongful death arising from the above

---

[4] The copy of the liability waiver document submitted to the Court is difficult to read in certain areas due to black spots on the document. However, the Plaintiffs do not contest the document. The Court was able to decipher the document language in almost its entirety and the portions of the document that were difficult to decipher do not affect the Court's analysis.

activities whether caused by active or passive
negligence of the releasees or otherwise, with
the exception of gross negligence. By
executing this document I agree to hold the
releasees harmless and indemnify them in
conjunction with any injury or loss of life
that may occur as a result of engaging in the
above activities.

3) By entering into this Agreement, I am not
relying on any oral or written representation
or statements made by the releasees, other
than what is set forth in this Agreement.

. . .[5]

(See Exhibit C to Kupfer Dec. [D.I 49-3], 56-57 on the docket.)

The incident that gave rise to this action occurred while
the Olmos were in the boat traveling out of the inlet.
Specifically, Dina Olmo asserts that she was sitting next to her
husband on a bench closest to the bow of the boat, and that she
had positioned herself to be slightly facing her husband with her
right leg tucked under her left leg. Sitting across from her were
her two sons. (Def.'s Facts [D.I. 49-6] ¶¶ 10-11; see also Pls.'
Resp. [D.I. 52-1], ¶¶ 10-11.) Dina Olmo testified that as the boat
was heading out of the inlet, she decided to straighten her body
to face her children, and that as she was straightening her body
and untucking her right leg from under her left, the boat hit a

---

[5] In addition, at the bottom of the liability waiver, Dina Olmo
signed the waiver, printed her name, and printed the date — 7/12/11
— signifying that "I have read this Agreement, understand it, and
I agree to be bound by it." (See Exhibit C to Kupfer Dec. [D.I.
49-3], 56-57 on the docket.)

wave and lifted her up in the air, and when she landed she felt "a
stabbing pain at the bottom of [her] back."[6] (Dina Olmo Dep. [D.I.
49-3], 193-196:23, 44-47 on the docket.) The boat "returned to the
dock within minutes of [Dina] Olmo's injury." (Def.'s Facts [D.I.
49-6], ¶ 20; see also Pls.' Resp. [D.I. 52-1], ¶ 20.) Once the
boat returned to the dock, Dina and Gene Olmo decided that they
would go to the hospital and their two sons could stay on the boat
with Captain Redner and take the very next parasailing trip.
(Def.'s Facts [D.I. 49-6], ¶ 21; see also Pls.' Resp. [D.I. 59-
1], ¶ 21.)

In support of its motion, AC Parasail contends that as
a matter of law, Dina Olmo waived and released AC Parasail from
the negligence claims asserted in the complaint as "[it is] a
matter of undisputed fact, [Dina Olmo] executed an enforceable
liability waiver . . . ." (See Brief [D.I. 49-1], 3-4.) In
addition, AC Parasail argues that the loss of consortium claim
fails as a matter of law because maritime law does not recognize
such a claim. (Id. at 4.)

AC Parasail further argues that the liability waiver was
clear and unambiguous as it provided notice of the "'inherent

---

[6] Plaintiffs allege Dina Olmo suffered "serious, severe permanent,
disabling injuries including but not limited to L2 compression
fracture, was required to obtain medical treatment and was caused
and will be prevented from engaging in her usual activities and
was otherwise damaged." (Complaint [D.I. 1], 25 on the docket.)

hazards and risks associated with . . . water sport activities' —
including the very risk by which [she] claims she was injured:
'changing water flow, tides, currents, wave action and ship's
wakes, [and] equipment failure or operator error.'" (<u>Id.</u> at 5.)
Moreover, AC Parasail contends that Dina Olmo failed to plead a
claim for recklessness against Defendants; instead her pleadings
amount to negligence, which she has waived through the liability
waiver. (<u>Id.</u> at 13–16.) In particular, AC Parasail notes that none
of the counts asserted by Dina Olmo allege that AC Parasail had
knowledge that the harm to Dina Olmo was substantially certain to
occur or that Captain Redner acted with an intentional disregard
of a known or obvious risk that was so great to make it highly
probable that harm would follow. (<u>Id.</u>) AC Parasail also argues
that there are no allegations that the captain acted with a
conscious indifference to the consequences. (<u>See</u> <u>id.</u>)

      Furthermore, AC Parasail argues that even if Dina Olmo
has pled a claim of recklessness, the undisputed facts do not
support such a claim. (<u>Id.</u> at 16.) AC Parasail contends that no
evidence was presented that tends to prove that the captain of the
boat was incompetent, careless, dangerous, or in an impaired
condition that made him an unsafe operator. (<u>Id.</u> at 16–17.)
Instead, Dina Olmo asserts that the captain "was going too fast
for the conditions" which AC Parasail argues is "nothing more than
negligence." (<u>Id.</u> at 17.) AC Parasail also avers that Dina Olmo's

assertion of recklessness is further undermined by the testimony of Rick Kocienski, who was also a passenger on the boat when Dina Olmo was injured. (Id. at 17–19.) Kocienski,[7] testified that the weather that morning was clear, sunny, with a light wind, and he described the boat ride as smooth. (Def.'s Facts [D.I. 49-6], ¶ 17.) Moreover, Mr. Kocienski stated that he was not concerned with the way the captain was operating the boat that morning and did not observe any other passengers express concerns or object to the way he was operating the boat. (Id. at ¶ 19.) Additionally, AC Parasail argues that the Olmos allowed their teenage sons to go on the next parasail trip with Captain Redner while they went to the hospital. (Def's Brief [D.I. 49-1], 19–21.) AC Parasail contends that if Captain Redner had acted recklessly, then Dina and Gene Olmo would not have allowed their unaccompanied teenage sons to go out on the next trip. (See id. at 21.)

In opposition, Plaintiffs contend that Dina Olmo did not understand the scope of the legal rights she was waiving when she signed the liability waiver. (See Pls.' Opp'n [D.I. 52], 5.) While Dina Olmo admitted at her deposition that by signing the waiver of liability she understood that she was giving up legal rights she

---

[7] According to Plaintiffs, Kocienski is a fact witness who testified to what he perceived as a passenger on the boat when Dina Olmo was injured. Kocienski is not being offered as an expert on boat rides and admittedly has never captained a boat nor has any experience with boats. (Pls.' Resp. [D.I. 52-1], ¶ 17.)

possessed, the parties dispute the scope of the legal rights waived. (See Pls.' Resp. [D.I. 52-1] ¶¶ 4-5; see also Dina Olmo Dep. [D.I. 49-3], 147:12-20, 35 on the docket.) In particular, Plaintiffs contend that Dina Olmo believed she was only waiving her legal rights in "regard to the parasailing event and not the boat ride to and from the event." (Pls.' Opp'n [D.I. 52], 5.) According to Plaintiffs, Dina Olmo "denies that she was fully informed of the inherent risks associated with parasailing, specifically the boat ride to and from the actual parasailing event." (Pls.' Resp. [D.I. 52-1], ¶ 4.) Nevertheless, after signing the waiver of liability, the Olmo family boarded the boat, which left the dock at approximately 9:30 a.m. (See Def.'s Facts ¶ 7.)

Alternatively, Plaintiffs argue that the liability waiver is unenforceable as it is an "exculpatory agreement" and AC Parasail cannot exculpate itself from reckless or grossly negligent conduct. (Pls.' Opp'n [D.I. 52], 5-7.) Plaintiffs contend that "[AC Parasail] was clearly reckless and grossly negligent in accelerating the parasailing boat into very choppy waters and large waves causing the boat to pitch and labor in a dangerous and uncontrolled manner." (Id. at 7.) Furthermore, in response to AC Parasail's argument that Plaintiffs have not pled a cause of action for recklessness, Plaintiffs aver that "even if [recklessness] was not properly [pled] in the initial pleadings,

Plaintiffs should be permitted to amend their pleadings and not have their complaint dismissed." (Id.)

A defendant who moves for summary judgment "bear[s] the burden 'to show that the plaintiff has failed to establish' an essential element of his claim." Halsey v. Pfeiffer, 750 F.3d 273, 287 (3d Cir. 2014) (quoting Burton v. Teleflex Inc., 707 F.3d 417, 425 (3d Cir. 2013)). Summary judgment is appropriate "when the pleadings, the discovery, the disclosure material on file, and any affidavits show that there is no 'genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Delaware Dep't of Nat. Res. & Envtl. Control v. U.S. Army Corps of Eng'rs, 685 F.3d 259, 269 (3d Cir. 2012) (quoting FED. R. CIV. P. 56(a)); see also Alabama v. North Carolina, 560 U.S. 330, 344 (2010).

In evaluating a summary judgment motion "courts are required to view the facts and draw reasonable inferences in the light most favorable to the party opposing the . . . motion." Scott v. Harris, 550 U.S. 372, 378 (2007) (internal quotation marks and citations omitted). "The line between reasonable inferences and impermissible speculation is often thin, . . . but nevertheless is critical because an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." Halsey, 750 F.3d at 287 (internal quotation marks and citations omitted). A non-moving party "must

present more than 'bare assertions, conclusory allegations or suspicions' to show the existence of a genuine issue." McCabe v. Ernst & Young, LLP, 494 F.3d 418, 436–37 (3d Cir. 2007) (internal quotation marks and citation omitted). The Court must view the evidence in a light most favorable to the non-moving party and any "justifiable inferences" shall be extended to the non-moving party. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," the Court may grant summary judgment. Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court will first address the parties' dispute regarding whether the Plaintiffs have pled a claim for recklessness. Federal Rule of Civil Procedure 81 provides that the Federal Rules of Civil Procedure "apply to a civil action after it is removed from a state court." FED. R. CIV. P. 81(c)(1); see also Frederico v. Home Depot, No. 05–5579, 2006 WL 624901, at *2 n.4 (D.N.J. Mar. 10, 2006) (noting that the Federal Rules of Civil Procedure rather than the New Jersey Rules Governing Civil Procedure governed the plaintiff's complaint which was originally filed in state court and removed to federal court), aff'd, 507 F.3d 188 (3d Cir. 2007); see also Lin v. Chase Card Servs., No. 09–5938, 2010 WL 1265185, at *2 n.2 (D.N.J. Mar. 26, 2010) (holding that Rule 8(a)'s pleading requirements apply to a complaint

originally filed in state court and subsequently removed to federal court). Consequently, the Court applies the federal rules to determine the sufficiency of Plaintiffs' pleading even though the complaint was filed in state court and removed to this Court. Under Rule 8, a claim for relief "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1975)). However, a "complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). A complaint is insufficient if it offers "labels and conclusions," a "formulaic recitation of the elements of a cause of action," or "'naked assertion[s]'" devoid of "'further factual enhancement.'" Id. at 678 (quoting Twombly, 550 U.S. at 557).

AC Parasail argues that Plaintiffs "asserted claims for ordinary negligence and unseaworthiness (maritime negligence) in their Complaint." (Brief [D.I. 49-1], 14.) Although, AC Parasail notes that "passing reference is made to 'recklessness' in two counts of the Complaint[,]" AC Parasail contends that "no factual content allows this [C]ourt to draw the reasonable inference that Atlantic City Parasail is liable for recklessness." (Id.)

14

Plaintiffs do not dispute AC Parasail's contention, but suggest that if a "[recklessness] cause of action was not properly [pled] in the initial pleadings, Plaintiffs should be permitted to amend their pleadings and not have their complaint dismissed." (Pls.' Opp'n [D.I. 52], 7.)

Plaintiffs' first reference of reckless conduct against AC Parasail occurs in Count I of the Complaint entitled "Negligent Entrustment," in which Plaintiffs assert that the captain operated the boat in "an unseamanlike, negligent and carless manner," and specifically "was as otherwise unseamanlike, negligent, careless and reckless." (See Complaint [D.I. 1], at 25-27 on the docket.) The second reference to reckless conduct occurs in Count II entitled "Unseamanlike & Negligent Acts of Captain Doe Operator of [Motor Vessel]."[8] (Id. at 27-28 on the docket.) The allegation in Count II is identical to the allegation in Count I, where the Plaintiffs assert that the captain operated the boat in "an unseamanlike, negligent and careless manner," and specifically that he "was as otherwise unseamanlike, negligent, careless and reckless." (Id.)

The Court finds that Plaintiffs have not met the minimum pleading requirements under FED. R. OF CIV. P. 8 to set forth a

---

[8] This Count is alleged against a fictitious Defendant, Captain John Doe. As explained supra, because Plaintiffs have failed to name the fictitious Defendant in their complaint, summary judgment is granted as to this count.

plausible claim of recklessness. In particular, the Court finds that the complaint neither provides AC Parasail with fair notice that Plaintiff is alleging recklessness as a cause of action, nor the grounds upon which such a cause of action would rest. Plaintiffs only make passing references to "reckless" conduct, and couch these references under counts specifically alleging negligence — "Negligent Entrustment" and "Unseamanlike & Negligent Acts of Captain Doe Operator of [Motor Vessel]." (Complaint [D.I. 1], 25-28 on the docket) (emphasis added).) These two references to reckless conduct couched under counts asserting negligence do not constitute fair notice to AC Parasail that Plaintiffs are asserting a cause of action for reckless conduct.

Moreover, even if Plaintiffs' pleading could be construed as asserting a claim of recklessness, it is still insufficient to meet the pleading requirements of Twombly and Iqbal. Plaintiffs did not plead the grounds for why or how Defendants' conduct was reckless. Under Iqbal, a label or conclusion — such as "reckless" — without facts is not enough to raise a plausible claim. Plaintiffs have not pled facts that would plausibly support a claim for recklessness and thus have failed to properly plead a cause of action for recklessness. Accordingly, the Court rejects the Plaintiffs' argument that it has asserted claims that AC Parasail acted recklessly.

Furthermore, Plaintiffs assert — without any reasoning or legal support — that this Court should permit them to amend their pleadings if they did not properly plead recklessness. (Pls.' Opp'n [D.I. 52], 7.) Even if the Court were to construe Plaintiffs' assertion as a request to amend their pleadings, this request is denied. "Plaintiffs cannot amend their pleadings in a summary judgment motion." HFGL Ltd. v. Alex Lyon & Son Sales Managers & Auctioneers, Inc., 700 F. Supp. 2d 681, 683 n.7 (D.N.J. 2010) (citations omitted); see also Gilmour v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004) (noting that "[a]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with FED. R. CIV. P. 15(a)" and that "[a] plaintiff may not amend her complaint through argument in a brief opposing summary judgment"). Plaintiffs have requested to amend their pleading as part of their opposition to the summary judgment motion; the proper procedure is to file a motion with the Court under Rule 15(a). Consequently, the Court denies Plainitffs' request to amend the pleading as procedurally deficient.[9]

---

[9] Plaintiffs' request to amend their pleadings suffers from additional deficiencies. Plaintiffs have failed to attach a proposed amended pleading to their opposition brief. This failure alone is grounds for the Court to deny a request to amend a pleading. See Cureton v. Nat'l Collegiate Athletic Ass'n, 252 F.3d 267, 273 (3d Cir. 2001) (observing that "the court may deny a request if the movant fails to provide a draft amended complaint"). Moreover, the deadline to file a motion to amend the pleadings was

In addition, since the Court will grant AC Parasail's summary judgment motion — as discussed infra — "if Plaintiff[s] intend[] to assert [a] new claim[] [for recklessness], [they] would be required to file a motion under Rule 59(e)." Holland v. Macerich, No. 09-914, 2011 WL 6934969, at *4 (D.N.J. Dec. 29, 2011) (citing S. Jersey Gas Co. v. Mueller Co., 429 F. App'x 128, 130-31 (3d Cir. 2011)). Federal Rule of Civil Procedure 59 provides that "[a] motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e).

The Court turns next to the substantive law that governs Plaintiffs' claims. AC Parasail argues that since this Court maintains admiralty jurisdiction over this action, substantive admiralty law should govern Plaintiffs' claims. (Brief [D.I. 49-1], 4.) In opposition, Plaintiffs do not dispute AC Parasail's application of admiralty law, but rely upon New Jersey law to argue that AC Parasail cannot waive grossly negligent or reckless conduct. (Pls.' Opp'n [D.I. 52], 6-7.) In its reply submission, AC

---

May 30, 2014. (See Scheduling Order [D.I. 20], Mar. 4, 2014.) As Plaintiffs' request was made outside of the deadline to amend pleadings, they also must satisfy the requirements under Federal Rule of Civil Procedure 16. Under Federal Rule of Civil Procedure 16, a scheduling order may be modified "for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4). Plaintiffs have failed to address either Rules 15 or 16, and have failed to attach a proposed amended pleading to their opposition brief. Accordingly, Plaintiffs' request is denied.

Parasail cites to New Jersey substantive law to argue that "no facts support a claim for gross negligence." (Def.'s Reply Brief [D.I. 55], 4-8.)

Federal courts have original jurisdiction over "[a]ny civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). Admiralty jurisdiction is evoked if the alleged tort occurs on a vessel in navigable waters, and the actions giving rise to the alleged tort have the potential to disrupt maritime commerce and "bear a significant relationship to traditional maritime activity." Sisson v. Ruby, 497 U.S. 358, 364-66 (1990). "With admiralty jurisdiction comes the application of substantive admiralty law." E. River S.S. Corp. v. Transamerica Delaval, Inc., 476 U.S. 858, 864 (1986); see also Fedorczyk v. Caribbean Cruise Lines, Ltd., 82 F.3d 69, 73 (3d Cir. 1996) (observing that "[s]ubstantive maritime law applies to a cause of action brought in admiralty").

This Court has admiralty jurisdiction over this action because the alleged tort occurred on a boat off the coast of New Jersey and the activity — "parasailing" — bears a significant relationship to admiralty activity. See Cobb v. Aramark Sports & Entm't. Servs., LLC, 933 F. Supp. 2d 1295, 1298 (D. Nev. 2013) (applying admiralty law when plaintiff was injured while parasailing on Lake Tahoe). Even though Dina Olmo was not injured while parasailing, her injury occurred on a boat, traveling through

navigable waters off the coast of New Jersey, and thus bears a significant relationship to admiralty activity. See Matter of Skyrider, No. 89-0128, 1990 WL 192479, at *3 (D. Haw. Aug. 6, 1990) (observing that "[c]areful and safe navigation of vessels in navigable waters have always been a fundamental admiralty concern. Navigation is an essential component in the parasailing activity"); see also Charnis v. Watersport Pro, LLC, No. 07-0623, 2009 WL 2581699, at *2 (D. Nev. May 1, 2009) (noting that "the operation of recreational boats, including those pulling skiers or wakeboarders, bears a significant relationship to traditional maritime activity").

The Court must also decide whether to apply substantive admiralty law or New Jersey law to this matter. Generally, "[w]ith admiralty jurisdiction . . . comes the application of substantive admiralty law." Yamaha Motor Corp., U.S.A. v. Calhoun, 516 U.S. 199, 206 (1996) (internal quotation marks and citation omitted). However, the application of admiralty law is not an "'automatic displacement of state law.'" Centennial Ins. Co. v. Lithotech Sales, LLC, 29 F. App'x 835, 836 (3d Cir. 2002) (quoting Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co., 513 U.S. 527, 545 (1995)). A federal court sitting in admiralty jurisdiction may rely on state law as long as the law in question "does not conflict with [federal] maritime law." Id.

Both admiralty law and New Jersey law recognize that exculpatory contracts, in certain circumstances, are valid and enforceable. See Charnis, 2009 WL 2581699, at *4 (holding that, under admiralty law, "owners of recreational vessels may, through written waivers, disclaim liability for their own negligence")[10]; see also Stelluti v. Casapenn Enters., LLC, 1 A.3d 678, 694 (N.J. 2010) (applying New Jersey law, the court upheld an exculpatory provision that eliminated liability for a fitness center's own negligence if the consumer was injured while using the fitness center).

Under admiralty law, an enforceable exculpatory clause must be "(1) clear and unambiguous; (2) [] not inconsistent with public policy; and (3) [] not an adhesion contract." Cobb, 933 F. Supp. 2d at 1298 (citing Charnis, 2009 WL 2581699, at *4). Under New Jersey law, courts also require that an exculpatory clause be clear and unambiguous. See Stelluti, 1 A.3d at 689-90 (explaining that to enforce an exculpatory clause it must "reflect the

---

[10] See also Olivelli v. Sappo Corp., 225 F. Supp. 2d 109, 118-20 (D.P.R. 2002)(applying admiralty law and validating release of liability for negligence signed by scuba diver in wrongful death claim); see also Cutchin v. Habitat Curacao-Maduro Dive Fanta-Seas, Inc., No. 98-1679, 1999 WL 33232277, *3 (S.D. Fla. 1999) (applying admiralty law and holding that a pre-accident waiver signed by a scuba diver absolved defendant from liability); see also Waggoner v. Nags Head Water Sports, Inc., No. 97-1394, 1998 WL 163811, at *5-6 (4th Cir. 1998) (applying admiralty law and enforcing a liability waiver and dismissing negligence claim against a company that rented a jet ski to the plaintiff).

unequivocal expression of the party giving up his or her legal rights that this decision was made voluntarily, intelligently and with the full knowledge of its legal consequences" (internal quotation marks and citation omitted)). Furthermore, an exculpatory clause is enforceable if it is not "plainly inconsistent with public policy." Id. at 689.[11] In addition, both admiralty law and New Jersey law provide that exculpatory clauses that disclaim liability for conduct beyond negligence or carelessness are inconsistent with public policy. See Charnis, 2009 WL 2581699, at *5 (noting that "[u]nder federal maritime law [], owners of recreational boats may disclaim liability for negligence, but they may not do so for gross negligence" and that "[g]ross negligence goes beyond ordinary negligence and is the willful, wanton, or reckless infliction of harm" (internal quotation marks and citation omitted)); see also Stelluti, 1 A.3d at 694-95 (applying New Jersey law and stating that defendant "could not exculpate itself from [] reckless or gross negligence," but could exculpate itself from "injuries sustained as a matter of

---

[11] The New Jersey Supreme Court in Stelluti listed four considerations to determine if a clause is consistent with public policy, including whether: (1) it adversely affects the public interest; (2) the exculpated party is under a legal duty to perform; (3) it involves a public utility or common carrier; or (4) the contract grows out of unequal bargaining power or is otherwise unconscionable. 1 A.3d at 689.

negligence").[12] Finally, New Jersey also recognizes, under the public policy factors outlined in Stelluti, that an exculpatory contract can be invalidated if the contract grows "out of unequal bargaining power or is otherwise unconscionable" such as a contract of adhesion. 1 A.3d at 687–89 (holding that "although the terms of the agreement were presented 'as is' to [plaintiff], rendering this a fairly typical adhesion contract in its procedural aspects, we hold that the agreement was not void based on any notion of procedural unconscionability"). Accordingly, as there is no conflict between admiralty law and New Jersey law regarding the enforceability of exculpatory contracts, and Plaintiffs do not dispute the application of admiralty law, this Court will apply substantive admiralty law to this motion.

Exculpatory clauses in admiralty contracts are permitted as long as they are clear and unambiguous, consistent with public policy, and not a contract of adhesion. See Olivelli v. Sappo Corp., 225 F. Supp. 2d 109, 116 (D.P.R. 2002). The Court finds that the language contained in the liability waiver signed by Dina Olmo is clear and unambiguous and that it unequivocally should have put her on notice of its legal significance and effect. "A waiver is clear and unambiguous if it specifically bars the

---

[12] Moreover, under New Jersey law, "[a]n agreement containing a pre-injury release from liability for intentional or reckless conduct also is plainly inconsistent with public policy." Stelluti, 1 A.3d at 689.

plaintiff's negligence claim and explicitly exonerates all defendants in the lawsuit." Cobb, 933 F. Supp. 2d at 1299. The language of the waiver is deemed "ambiguous where it is reasonably susceptible to more than one interpretation." F.W.F., Inc. v. Detroit Diesel Corp., 494 F. Supp. 2d 1342, 1357 (S.D. Fla. 2007). However, a release does not need to "list . . . each possible manner in which releaser could be injured during an inherently dangerous event." Olivelli, 225 F. Supp. 2d at 118.

In Olivelli, the decedent died during a scuba diving excursion and the cause of death was determined to be air embolism. Id. at 110-11. Prior to diving, the Olivelli decedent executed a "Liability Release and Express Assumption of Risk form" in which she agreed to assume all risks associated with diving, whether foreseen or unforeseen and release the defendants of liability for negligence. Id. at 110-11. The Olivelli plaintiffs brought an action asserting that the decedent's death was the result of defendants' negligence. Id. at 111. Similar to Dina Olmo, the Olivelli plaintiffs argued that the liability waiver "failed to warn [the decedent] of the dangers [she would] encounter[] once she boarded the boat." Id. at 117. The Olivelli court disagreed with the plaintiffs and held that the liability waiver clearly and unambiguously waived their claims of negligence. Id. at 118-19. The Olivelli court reasoned that the liability waiver executed by the decedent (a) advised and thoroughly informed her of the

24

inherent risks of diving;[13] (b) included a "specific recitation of the types of risks associated with diving;" and (c) explained that by executing the agreement, she had "accepted responsibility for the consequences." Id. at 118. Accordingly, the Olivelli court held that the decedent "had the particular knowledge of the specific and precise risk" and she agreed to release the defendants from liability for personal injury she suffered due to the defendants' negligence. Id. at 117-18.

In the present matter, Dina Olmo contends that by executing the liability waiver, she thought she was only waiving her legal rights in "regard to the parasailing event and not the boat ride to and from the event." (Pls.' Opp'n [D.I. 52], 5.) However, Dina Olmo's purported understanding of the liability waiver is contrary to the clear and precise language of the liability waiver. Similar to the liability waiver in Olivelli, where the decedent agreed to release the defendants from liability, the liability waiver executed by Dina Olmo also agreed to release AC Parasail from liability for personal injury she suffered due to negligence. The liability waiver advised and informed Dina Olmo of the "inherent hazards . . . associated with Parasailing [and] water transportation to and from the parasail vessel . . . ." (Exhibit C to Kupfer Dec. [D.I. 49-3], 56 on the docket (emphasis added).)

---

[13] Included in the list of inherent risks was embolism. Olivelli, 225 F. Supp. 2d at 117.

The liability waiver also recited specific types of hazards Dina Olmo should be aware of, including "changing water flow, tides, currents, wave action and ship's wakes." (<u>Id.</u>) Furthermore, Dina Olmo agreed that in order to participate in the "Watersports, <u>transportation</u>, and parasailing activities . . . including <u>water transportation (shuttle boat)</u> to and from the parasail vessel" she agreed to "waive and release any and all claims based upon negligence . . . against [Capt. Eric Redner and Atlantic City Parasail]. (<u>Id.</u> (emphasis added).

Dina Olmo's assertion that she was not waiving legal rights in regards to the boat ride to and from the parasailing site is unfounded based on the clear and unambiguous language found in the liability waiver. Dina Olmo does not dispute that she executed the liability waiver. Moreover, Dina Olmo does not dispute that she was injured while on AC Parasail's boat and that her injury occurred when the boat hit a wave while Captain Redner was transporting the passengers to the parasailing location. Accordingly, the Court finds that based on the clear and unambiguous language in the liability waiver executed by Dina Olmo, she had particular knowledge of the specific and precise hazards involved with parasailing and the related activities (including water transportation) and she agreed to release Defendants from liability for personal injury she suffered due to AC Parasail's

negligence.  Therefore,  the  liability  waiver  was  clear  and
unambiguous.

In  addition,  under  admiralty  law,  exculpatory  clauses
waiving  liability  for  negligence  are  consistent  with  public
policy.  See e.g., Cobb, 933 F.3d at 1299 (noting that an "express
waiver [wa]s not inconsistent with public policy because waivers
of  liability  on  navigable  waters  do  not  contravene  federal  public
policy"); see also In re Aramark Sports & Entm't Servs., LLC, No.
09-637, 2012 WL 3776859, at *7 (D. Utah Aug. 29, 2012) (holding
that  an  admiralty  exculpatory  clause  disclaiming  negligence  was
consistent  with  public  policy  and  enforceable).  Plaintiffs  do  not
dispute  that  exculpatory  clauses  disclaiming  negligence  are
consistent  with  public  policy.  (See Pls.' Opp'n [D.I.  52], 5-7.)
Instead,  Plaintiffs  argue  that  "there  can  be  no  waiver  or  release
of  or  immunity  from  gross  negligence . . . [and] since  the []
exculpatory  agreement  does  not  release  Defendants  from  reckless  or
gross  negligence . . . summary  judgment . . . should  be  denied."
(Id. at 7.) However, as explained supra, Plaintiffs have failed to
plead  a  cause  of  action  for  recklessness  or  gross  negligence.
Accordingly,  because  the  liability  waiver  disclaims  liability  for
negligence,  and  disclaiming  negligence  is  not  a  violation  of  public
policy,  the  Court  finds  the  liability  waiver  executed  by  Dina  Olmo
to  be  consistent  with  public  policy.

27

Finally, the Court addresses whether the liability waiver constitutes a contract of adhesion. AC Parasail argues that the liability waiver was not a contract of adhesion as Dina Olmo had the opportunity to decline to participate in the parasailing activity. (See Brief [D.I. 49-1], 11.) AC Parasail relies upon Dina Olmo's own testimony where she admittedly engaged in a conversation with AC Parasail's employee where she "'gather[ed] information so [the family] could decide whether we were going to [go parasailing] or not.'" (Id. at 11–12 (quoting Dina Olmo Dep. [D.I. 49-3], 122:14 to 124:13, 32-34 on the docket).) AC Parasail contends that after this conversation, Dina Olmo and her family decided to participate in the parasailing activity and signed the liability waiver. (Id. at 12.) AC Parasail concludes that because Dina Olmo was free to decide whether to participate in the parasailing activity, the liability waiver cannot be a contract of adhesion. (Id. at 12–13.) In opposition, Plaintiffs make cursory reference to contracts of adhesion when discussing Stelluti,[14] but do not argue precisely why the liability waiver in the present matter is an unenforceable adhesive contract. (See Pls.' Opp'n [D.I. 52], 6–7.)

---

[14] Plaintiffs argue "[t]he Stelluti case involved a contract of adhesion for a fitness club similar to the contract in question here except that contract did not contain an indemnification section of the agreement." (See Pls.' Opp'n [D.I. 52], 6.)

The Olivelli, Charnis, and Cobb courts all found that liability waivers for voluntary recreational activities are not adhesive contracts. See Olivelli, 225 F. Supp. 2d at 119 (holding that scuba diving is a "strictly voluntary recreational pursuit" and is not an "essential service[] such as medical care . . . where the court[] would be more likely to find that a contract of adhesion exists"); see also Charnis, 2009 WL 2581699, at *5 (concluding that a liability waiver for the recreational activity of wakeboarding was not a contract of adhesion for the reasons explained in Olivelli); see also Cobb, 933 F. Supp. 2d at 1299 (observing that "[u]nder federal admiralty law, liability waivers for recreational sporting activities like parasailing are not contracts of adhesion because they are not essential services"). Similarly, the Court finds the liability waiver is not a contract of adhesion. Parasailing is a voluntary recreational activity and Dina Olmo freely agreed to participate in the activity. Prior to signing the liability waiver, Dina Olmo gathered information from AC Parasail's employee in order to decide whether the family would participate in the activity. The Court finds that the liability waiver is not a contract of adhesion.

Accordingly, because the liability waiver is clear and unambiguous, conforms to public policy, and is not a contract of adhesion, the Court finds the liability waiver to be enforceable, and therefore, Plaintiff has waived her claims of liability against

29

AC Parasail. AC Parasail's motion for summary judgment regarding Dina Olmo's claims against AC Parasail for negligent entrustment of the subject motor vessel (Count I); Defendant Captain Doe's negligent maintenance and/or supervision of passengers (Count III); violation of common carrier higher duty of care (Count IV); and unseaworthiness (Count V) is granted. Therefore, these claims are dismissed.

AC Parasail also moves for summary judgment with respect to Gene Olmo's loss of consortium claim. (Brief [D.I. 49-1], 21.) AC Parasail argues that the loss of consortium claim should be dismissed because admiralty law does not recognize such a claim. (See id.) In Miles v. Apex Marine Corp., the Supreme Court denied recovery for loss of society under general admiralty law asserting that the law does not recognize such a cause of action. 498 U.S. 19, 32–33 (finding that "[w]e must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman . . . [t]oday we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law"). In Miles, the plaintiff was the mother and administratrix of the estate of a seaman who was stabbed and killed by a fellow crew member aboard a vessel. Id. at 21. However, courts have distinguished Miles by holding that it only applies to seamen or crewmen aboard a vessel, and have not extended the holding to non-

30

seaman. See Foulk v. Donjon Marine Co., 182 F.R.D. 465, 476 (D.N.J. 1998) (noting that "[t]his Court has already held that Miles does not prevent a loss of consortium claim . . . if [Plaintiff] is not a seaman, loss of consortium damages might or might not be available" (citing Koernschild v. W.H. Streit, Inc., 834 F. Supp. 711, 720 (D.N.J. 1993))); see also Rosen v. Brodie, No. 94-3501, 1995 WL 394087, at *1 (E.D. Pa. 1995) (observing that "plaintiffs' claim is that of a non-seaman injured in territorial waters to which Miles has not been extended"); see also Ehlman v. First Marine Transp. Corp., No. 05-111, 2007 WL 528656, at *5 (W.D. Ky. Feb. 14, 2007) (asserting that "general maritime law does not preclude all loss of consortium claims").

As the Court has granted AC Parasail's summary judgment motion with respect to Dina Olmo's claims, summary judgment is also granted with respect to Gene Olmo's loss of consortium claim. See Watson v. Oceaneering Int'l, Inc., 387 F. Supp. 2d 385, 391 (D. Del. 2005). Accordingly, the Court need not determine whether loss of consortium claim is recoverable under admiralty law. See id. (finding that "[b]ecause the court has concluded that [plaintiff's] general maritime claims should be dismissed, it will not examine whether loss of consortium is recoverable under the general maritime law").

Consequently, for the reasons set forth and for good cause shown, AC Parasail's motion for summary judgment [D.I. 49] is granted. An appropriate order will be entered.


s/ Ann Marie Donio
_____
ANN MARIE DONIO
UNITED STATES MAGISTRATE JUDGE

Dated: April 28, 2016